United States District Court
Southern District of Texas
**ENTERED**
October 26, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SIGNET MARITIME CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-23-1269 |
| ERIC R. NYKANEN, | § § § | |
| Defendant. | § § § § | |

**MEMORANDUM AND OPINION**

This dispute arises out of an employment relationship gone sour. The defendant and counterclaimant, Eric Nykanen, formerly worked for Signet Maritime Corporation as the Human Resources Manager. Signet has sued him for appropriating and disclosing its confidential business information, for improperly using private information about Signet employees, and for breaching duties he owed his former employer. Nykanen counterclaims that he was terminated for opposing Signet's alleged violations of the Fair Labor Standards Act and the Family and Medical Leave Act. Nykanen has moved to dismiss Signet's state-law claims and for leave to amend his answer and counterclaims. (Docket Entry Nos. 27, 50). For the reasons set out below, both motions are denied.

**I.      Background**

The plaintiff, Signet Maritime Corporation, alleges that its former employee, Eric Nykanen, wrongfully disclosed Signet's confidential business information and trade secrets to a third party before leaving his position as Human Resources Manager. (Docket Entry No. 1 at ¶ 19). Signet also alleges that Nykanen, after resigning, harassed Signet employees using their

personal contact information and disclosed to them private health information about another Signet employee. (*Id.* at ¶ 18). Signet asserts claims for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832 *et seq.*, and the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE § 134A. (*Id.* at 8–12). Signet also asserts that Nykanen breached his fiduciary duty and duty of loyalty under Texas common law. (*Id.* at 13–14).

In April 2023, the court entered an agreed preliminary injunction prohibiting Nykanen from using or disclosing Signet's confidential information and trade secrets and ordering him to produce Signet documents in his possession. (Docket Entry No. 20). In October 2023, the court entered an agreed permanent injunction granting similar relief. (Docket Entry No. 58).

On June 20, 2023, Nykanen filed his answer and counterclaims. (Docket Entry No. 28). Nykanen asserts that Signet terminated him for opposing its alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 203 *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. (*Id.* at ¶¶ 58–70). On the same day, Nykanen moved to dismiss Signet's state-law claims under Rule 12(b)(6) and (1), arguing that Signet failed to allege the injury element of its state-law claims and that the court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367. (Docket Entry No. 27).

On July 14, 2023, the court held an initial pretrial and scheduling conference. (Docket Entry No. 34). Neither party indicated that they anticipated further amendments to their pleadings. (Docket Entry No. 54). The court accordingly issued a scheduling and docket control order requiring that any pleading amendments be supported by "good cause." (Docket Entry No. 39). On July 31, 2023, Nykanen amended his answer and counterclaims as a matter of course under Rule 15(a)(1), changing the provision under which he brought his Fair Labor Standards Act claim.

(Docket Entry No. 36 at ¶¶ 57–75). On September 20, 2023, Nykanen moved for leave to amend his answer and counterclaims for a second time. (Docket Entry No. 50).

This memorandum and opinion addresses Nykanen's motion to dismiss, (Docket Entry No. 27), and motion for leave, (Docket Entry No. 50).

II.     **The Legal Standards**

   A.     **Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does

not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### B. Rule 12(b)(1) and § 1367

A motion to dismiss under Rule 12(b)(1) calls into question the district court's subject-matter jurisdiction. A movant may demonstrate a lack of jurisdiction from (1) the face of the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The party invoking the court's jurisdiction carries the burden of demonstrating that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c).

The determination of whether to exercise supplemental jurisdiction is guided by "judicial economy, convenience, fairness, and comity." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 207 (5th Cir. 2018).

### C. Rule 16(b)

"Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired." *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 348 (5th Cir. 2008). Rule 16(b) permits modification of a scheduling order "only for good cause and with the judge's consent." The good-cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (citing 61 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). In determining whether good cause exists, courts consider: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (quoting reference omitted) (alterations adopted).

### III.  Analysis

Nykanen moves to dismiss Signet's state-law claims under Rule 12(b)(6) on the ground that Signet has failed to allege the element of injury. (Docket Entry No. 27 at 3). Alternatively, Nykanen moves to dismiss the state-law claims under Rule 12(b)(1) and asks the court to decline to exercise supplemental jurisdiction over Signet's state-law claims. (*Id.* at 5–6). Separately, Nykanen moves for leave to amend his answer and counterclaims. (Docket Entry No. 50). The court addresses each in turn.

#### A.  Nykanen's Rule 12(b)(6) Motion

##### 1.  Texas Uniform Trade Secrets Act

The Texas Uniform Trade Secrets Act prohibits the misappropriation of trade secrets.[1] The Act authorizes injunctive relief of "[a]ctual or threatened misappropriation," TEX. CIV. PRAC. & REM. CODE § 134A.003(a), in addition to actual damages and, in certain circumstances, exemplary damages and attorneys' fees, §§ 134A.004, 134A.005.

---

[1] The Act defines "misappropriation" as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

(a) derived from or through a person who had utilized improper means to acquire it;

(b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

TEX. CIV. PRAC. & REM. CODE § 134A.002(3).

6

The parties disagree about: (1) whether injury apart from the misappropriation itself is a necessary element under the Texas Uniform Trade Secrets Act; and (2) if it is, whether Signet adequately pleaded this element. The court agrees with Signet that, when a plaintiff pleads a claim for injunctive relief under the Act, the plaintiff need not allege and prove an injury apart from the misappropriation itself. The court accordingly does not decide whether Signet adequately pleaded injury beyond misappropriation, or actual damages.

The reasoning in *Lifesize, Inc. v. Chimene*, 2017 WL 1532609 (W.D. Tex. Apr. 26, 2017), is instructive. In that case, the Western District rejected the defendant's argument that the plaintiff had failed to state a claim under the Texas Uniform Trade Secrets Act, holding that "[m]isappropriation, as TUTSA defines it, does not require a showing of injury beyond the improper acquisition or the unauthorized disclosure or use of its trade secrets." *Id.* at *9. The court noted that a plaintiff may obtain injunctive relief under the Act based on "'[a]ctual or threatened *misappropriation*,' not actual or threatened *injury*." *Id.* (citing § 134A.003(a)). Requiring a plaintiff to plead an injury flowing from a misappropriation of trade secrets would undermine the availability of injunctive relief when the misappropriation is merely threatened.

The court is not persuaded by Nykanen's argument that "injury is a necessary (and separate) element" of a claim under the Texas Uniform Trade Secrets Act. (Docket Entry No. 35 at 3). *DHI Group, Inc. v. Kent*, 2022 WL 3755782, at *4 (5th Cir. Aug. 30, 2022), on which Nykanen relies, does not support his argument. Nykanen also cites *Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, 2020 WL 7332677, at *4 (Tex. App.—Dallas Dec. 14, 2020, no pet.), which lists "damages" as an element under the Act but does not hold that damages are required when a plaintiff seeks injunctive relief. It is well settled that injunctive relief is available even when a plaintiff does not allege, or has failed to prove, actual damages. *See, e.g.*,

7

*Carbo Ceramics, Inc. v. Keefe*, 166 Fed. App'x. 714, 725 (5th Cir. 2006) ("While Carbo has failed to present a triable issue of material fact as to actual damages recoverable under its trade secret misappropriation and breach of fiduciary duty claims, we note that Carbo might be entitled to a permanent injunction, which it has requested.")

Nykanen admits that "potential injury" is sufficient for injunctive relief under the Act, but he argues that "any potential injury has been rendered moot by [Nykanen's] compliance" with the agreed preliminary injunction issued in April 2023. (Docket Entry No. 27 at 4 n.1; Docket Entry No. 20). But under Rule 12(b)(6), the question is whether Signet has stated a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. It has met this requirement.

### 2. Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty under Texas law are: "(1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *Quantlab Grp., LP v. Dempster*, 2018 WL 6652855, at *1 (S.D. Tex. Dec. 19, 2018) (quoting *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017)). The parties disagree about whether Signet has adequately pleaded the element of damages.

Signet's complaint alleges that:

> Nykanen breached his fiduciary duties owed to Signet by misappropriating confidential and privileged information maintained by Signet and engaging in the above-described misconduct. Nykanen's breaches of his fiduciary duties have proximately caused Signet injury and have benefitted Nykanen. Unless Nykanen is enjoined from breaching his fiduciary duties, Signet will continue to be irreparably harmed because Nykanen will continue to improperly use and disclose Signet's confidential and sensitive information, including personnel information and privileged communications, to Signet's detriment.

(Docket Entry No. 1 at ¶ 40).

In support of his argument that Signet has failed to adequately allege damages, Nykanen relies on *Randstad Gen. Partner (US), LLC v. Beacon Hill Staffing Group, LLC*, 2021 WL

8

8442885, at *7 (N.D. Tex. Aug. 4, 2021), and *Trieger v. Ocwen Loan Servicing, LLC*, 2019 WL 3860689, at *6 (N.D. Tex. Aug. 15, 2019). *Randstad* involved a tortious interference claim. 2021 WL 8442885, at *5–6. The court dismissed the claim under Rule 12(b)(6) in part because it found that the plaintiff's allegation of damages was conclusory. *Id.* at *7. The plaintiff had alleged that, "[a]s a direct and proximate result of Beacon Hill's actions described above, [the plaintiff] has suffered and continues to suffer irreparable harm and monetary damage." *Id.* The court held that "[t]his is exactly the 'formulaic recitation of the elements of a cause of action that will not do.' While [the plaintiff] need not plead a precise accounting at this stage, it must at least plead facts showing how the alleged interference damaged it." *Id.* (citing *Twombly*, 550 U.S. at 555) (alteration adopted).

The court in *Trieger* similarly concluded that the plaintiffs had failed to adequately allege the damages element of their breach-of-contract claim: "Plaintiffs have failed to set forth any specific allegations regarding damages with respect to their breach of contract claim. The Petition states in conclusory fashion that they have sustained 'actual damages' due to Defendants breach but does not state the nature of such damages." 2019 WL 3860689, at *6.

*Randstad* and *Trieger* are distinguishable. Signet's complaint alleges damages from Nykanen's improper use and disclosure of Signet's "confidential and sensitive information." (Docket Entry No. 1 at ¶ 40). This allegation gives more detail about the nature of Signet's damages than the allegations in *Randstad* and *Trieger*, which stated merely that the plaintiffs had suffered damages.

Nykanen's Rule 12(b)(6) motion to dismiss, (Docket Entry No. 27), is denied.

9

### B.  Nykanen's Rule 12(b)(1) Motion

Nykanen argues that the court should decline to exercise supplemental jurisdiction over Signet's state-law claims because they "substantially predominate" over Signet's federal claims. (Docket Entry No. 27 at 5–6). Nykanen argues that Signet's claim under the Texas Uniform Trade Secrets Act requires "substantially more proof and the discussion of substantially more issues" than Signet's federal claim under the Defend Trade Secrets Act. (*Id.* at 5–8). According to Nykanen, the claim under the Texas Uniform Trade Secrets Act requires proof of elements that the federal claim does not—namely, proof of a "confidential relationship or improper acquisition in addition to proof of damages." (*Id.* at 5–6). Nykanen also argues that Signet's breach-of-fiduciary-duty claim requires the court "to first determine the issue of whether a fiduciary relationship existed and whether Nykanen breached any such duties owned in a fiduciary relationship." (*Id.* at 6).

Nykanen's arguments are unpersuasive. Signet's state and federal misappropriation claims are based on the same trade secrets and conduct, (*see* Docket Entry No. 1 at ¶¶ 18–19, 25, 33), and "a substantial number of provisions in the two statutes—including the definition of 'trade secret'—are either identical or very similar in many respects." *Pro Mineral, LLC v. Marietta*, 2023 WL 2410884, at *2 (N.D. Tex. Mar. 8, 2023) (quotation marks and quoting reference omitted). Both statutes require proof that "(1) the trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *Well Cell Glob. LLC v. Calvit*, 2022 WL 16857060, at *9 (S.D. Tex. Nov. 10, 2022), *rev'd and remanded on other grounds*, 2023 WL 6156082 (Fed. Cir. Sept. 21, 2023) (quoting *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022)). The Defend Trade Secrets Act requires the additional element that the

10

trade secret be "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b). Signet's breach-of-fiduciary duty claims are also based on the same alleged misconduct. (*See* Docket Entry No. 1 at ¶¶ 39–40). The state and federal claims will involve substantially the same evidence, and the state claims do not "substantially predominate" over the federal claims.

For the same reasons, the court finds that considerations of judicial economy, convenience, fairness, and comity support the exercise of supplemental jurisdiction. *See D'Onofrio*, 888 F.3d at 207. The significant overlap between the state and federal claims supports trying the claims together. Trying them separately would waste judicial resources and risk conflicting rulings. *See Villarreal v. JP Morgan Chase Bank, Nat. Ass'n*, 720 F. Supp. 2d 806, 809 (S.D. Tex. 2010); *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 430 (E.D. La. 2010).

Nykanen's motion to dismiss under Rule 12(b)(1), (Docket Entry No. 27), is denied.

### C. Nykanen's Motion for Leave

Nykanen moves for leave to file a second amended answer and counterclaims. (Docket Entry No. 50). He seeks to add two claims and a request for "punitive damages, mental anguish, and pain and suffering damages." (Docket Entry No. 50-1 at 10–11, 13). One of the claims is under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3); he proposes to add the allegation that "Signet retaliatorily filed the present lawsuit against Nykanen out of a desire to financially ruin Nykanen for complaining, in good faith, that Signet was violating the [Fair Labor Standards Act] . . . ." (*Id.* at 10). He also seeks to add a similar retaliation claim under § 2615(a)(2) of the Family and Medical Leave Act. (*Id.* at 11).

Because a pleading amendment would not be timely under the scheduling and docket control order, (Docket Entry No. 39), Nykanen must demonstrate that he could not have sooner

amended his answer despite his diligence. *See S&W Enters.*, 315 F.3d at 535. Nykanen argues that he could not have timely brought the two retaliation claims because he did not learn that Signet had filed this lawsuit in bad faith until the hearing on September 7, 2023. (Docket Entry No. 50 at 4). At that hearing, Signet's counsel stated, "I do not have any damages to disclose, to be completely candid with the Court." (*Id.* at 2). Nykanen does not explain why he did not add the requests for additional relief when he amended his answer on July 31, 2023. (Docket Entry No. 36).

Signet responds that Nykanen knew of the facts on which he bases the retaliation claims when he filed his answer on June 20, 2023. (Docket Entry No. 59 at 11). Signet notes that Nykanen had alleged, in his May 2023 discrimination charge filed with the Equal Employment Opportunity Commission, that Signet had unlawfully retaliated against him by filing this lawsuit. (*Id.*). Signet also notes that Nykanen argued in his June 20, 2023, motion to dismiss, (Docket Entry No. 27), that Signet had failed to allege damages for its state-law claims. (Docket Entry No. 59 at 11). Finally, Signet notes that its counsel made statements "nearly identical" to the September 7, 2023, statement at the initial conference held on July 14, 2023. (*Id.* at 12). Specifically, Signet points to its counsel's statement that "[d]amages at this point on the plaintiff's side may have been mitigated by the preliminary injunction." (*Id.*).

The court finds that Nykanen has failed to show that he could not have reasonably added the retaliation claims when he amended his answer under Rule 15(a)(1) on July 31, 2023. (Docket Entry No. 36). The court is not persuaded that Nykanen learned the basis for those claims on September 7, 2023. And Nykanen has failed to explain why he could not have sought the additional relief when he amended his answer the first time. His motion for leave to amend, (Docket Entry No. 50), is denied.

## IV. Conclusion

Nykanen's motion to dismiss Signet's state-law claims, (Docket Entry No. 27), is denied. Nykanen's motion for leave, (Docket Entry No. 50), is also denied.

SIGNED on October 26, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge